[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13929
Non-Argument Calendar

_____

D.C. Docket No. 9:11-cv-80360-DTKH


JEFFREY A. AZIS,

                                                            Plaintiff-Appellant,

JEFFREY A. AZIS, CPA, PA,

                                                            Plaintiffs,


versus


UNITED STATES INTERNAL REVENUE SERVICE,

                                                            Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 1, 2013)

Before CARNES, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Jeffrey Azis, proceeding *pro se*, appeals the district court's order denying his petition to quash three Internal Revenue Service ("IRS") summonses issued to third-party banks.[1]

In April 2010, Azis, the owner of a small accounting and consulting business, received notice from the IRS that he was being audited. As part of its investigation, the IRS issued summonses to two banks where Azis and his corporation held accounts. Azis sought to quash the summonses, and argued, among other things, that they were issued to harass him because of his political beliefs and associations. Because the summonses were issued for an improper purpose, he argued, they did not meet the criteria for lawful summonses found in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The district court referred the matter to a magistrate judge, who held an evidentiary hearing. During the hearing, the magistrate judge heard testimony from IRS agents Tilo Alexander and Heather Cole, who testified that Azis was selected for audit because (1) he was a non-filer with unreported income; (2) he had purchased a product from Robert Schultz, an individual who promoted and sold tax avoidance schemes; and (3) he had participated in a lawsuit, with Schultz and the nonprofit organization We The People, against the government in which he had stated that he

---

[1] Azis originally filed his appeal on behalf of his corporation, Jeffrey A. Azis, CPA, PA, as well as himself. We dismissed the appeal as to the corporation for want of prosecution after it failed to retain counsel. Accordingly, the only petitioner on appeal is Azis in his individual capacity.

would violate the law by not paying income taxes.  Agent Cole further testified that, based on her investigation, she saw no reason to believe that Azis was selected for audit because of his political beliefs.  The magistrate judge issued a report and recommendation ("R&R"), credited the testimony of the IRS agents, and found that Azis was audited for the reasons stated by Agent Cole.  Azis filed 22 pages of objections to the R&R, including an objection to the magistrate judge's adoption of Agent Cole's testimony.   The next day, the district court fully adopted the R&R and denied Azis's motion to quash.

On appeal, Azis  argues that the district court failed to make the required de novo review of the R&R.  The evidentiary hearing transcript that the district court referred to in its adoption of the R&R was not filed until a week after the court adopted the R&R.  The district court thus could not have conducted a de novo review.

The government responds that, after the transcript was entered on the docket, Azis brought the matter to the district court's attention in his motion for reconsideration.  When the district court denied that motion, it implicitly determined that nothing in the transcript changed the outcome of the case.

We review a district court's treatment of a magistrate judge's report and recommendation for abuse of discretion.  *Williams v. McNeil*, 557 F.3d 1287, 1290 (11th Cir. 2009).

3

A district court judge may designate a magistrate judge to conduct hearings, including evidentiary hearings, and, for certain motions, to submit proposed findings of fact and recommendations to the judge of the court. 28 U.S.C. § 636(b)(1)(B). When a party objects to the findings contained in a magistrate judge's R&R, the district court must conduct a *de novo* review of those findings. 28 U.S.C. § 636(b)(1). "The *de novo* requirement is essential to the constitutionality of section 636." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). *De novo* review does not require a new hearing of witness testimony, but "does require independent consideration of factual issues based on the record." *Id.* at 513.

The district court wholly adopted the R&R, which included reference to Agent Cole's testimony, the day after Azis filed 22 pages of objections to its findings. Although the district court filed its order before the transcript was entered in the record, and arguably erred, Azis filed a motion for reconsideration, which gave the district court the opportunity to review the transcript. Thus any error would be harmless because the district court has now had the opportunity to review the transcript.

Next, Azis argues that the district court erred when it did not quash the summonses because the summonses failed to meet all four prongs of *Powell*. First, he asserts the investigation was not conducted for a legitimate purpose

4

because it was based on Azis's political beliefs and membership in We the People. Second, the summonses sought irrelevant client-identifying information. Third, the summonses sought documents already in the IRS's possession. Finally, correct administrative procedures were not followed with regard to the issuance of the summonses

The government responds that the district court properly denied Azis's petition to quash the IRS summonses because: (1) the IRS has broad summons authority; (2) the government established a prima facie case that the summonses were valid; (3) Azis's assertion that the IRS already possessed the information sought is incorrect; (4) Agent Alexander served attested copies of the summonses on the third parties; (5) Agent Alexander's failure to provide Azis with the attachment to the summons was inadvertent, and caused Azis no prejudice; (6) Agent Alexander possessed authority to issue summonses; and (7) client-identifying information was relevant to the investigation.

This Court reviews an order enforcing an IRS summons for clear error. *Nero Trading, LLC v. U.S. Dep't of Treasury*, 570 F.3d 1244, 1248 (11th Cir. 2009). Section 7602 of the Internal Revenue Code permits the IRS to "examine any books, papers, records, or other data which may be relevant or material to" determine the correctness of a tax return or the liability of a taxpayer. 26 U.S.C. § 7602(a)(1). The IRS may summon either the person liable for the tax or "any

person having possession, custody, or care of books of account containing entries relating to the business of the person liable for" the tax.  26 U.S.C. § 7602(a)(2).

Section 7609(b) grants a person entitled to notice of a summons the right to petition to quash the summons.  26 U.S.C. § 7609(b).  If the summons is challenged:

> the IRS must demonstrate (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS' possession and, (4) that it has taken the administrative steps necessary to the issuance of a summons.

*La Mura v. United States*, 765 F.2d 974, 979 (11th Cir. 1985) (citing *Powell*, 379 U.S. at 57-58, 85 S. Ct. at 255).  The IRS may satisfy its minimal burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts.  *La Mura*, 765 F.2d at 979.  If the IRS makes the necessary showing, the "burden shifts to the party contesting the summons to disprove one of the four elements of the government's prima facie showing."  *Id.* at 979-80.  The taxpayer's burden to disprove the actual existence of a valid civil tax determination or collection purpose by the IRS is "a heavy one."  *United States v. LaSalle Nat. Bank*, 437 U.S. 298, 316, 98 S. Ct. 2357, 2367  (1978).  Indeed, the contesting party must allege specific facts and introduce evidence.  *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992).

6

Here, the government established a prima facie case for enforcement of the summonses. As detailed below, the declaration and testimony of Agents Alexander and Cole were sufficient to establish that (1) the purpose of the summonses was to obtain records relevant to determining Azis's tax liability for 2007 and 2008; (2) the records were relevant to Azis's tax liability; (3) the IRS did not already possess the requested records; and (4) the IRS complied with the administrative steps necessary to issue the summonses. *See La Mura*, 765 F.2d at 979. Accordingly, Azis had the "heavy" burden to disprove one of the four elements of the prima facie case to show that enforcement of the summonses would constitute an abuse of discretion. *See LaSalle Nat. Bank*, 437 U.S. at 316, 98 S. Ct. at 2367; *La Mura*, 765 F.2d at 979-80.

*A. Legitimate Purpose*

The district court's finding with respect to the purpose for which an IRS summons has been issued is one of fact, and this Court will not overturn it unless it is clearly erroneous. *La Mura*, 765 F.2d at 981 n.10.

Here, the district court's finding that the IRS issued the summonses for a legitimate purpose was not clearly erroneous. Agent Alexander attested that the summonses were issued as part of an investigation to determine Azis's tax liability for 2007 and 2008 because the IRS suspected that Azis had unreported income. In June 2009, the Classification Group selected Azis's personal return for 2007

7

because, at that time, he had yet to file his return.  Agent Cole testified that Azis was selected for audit because: (1) he was a non-filer with unreported income; (2) he had purchased a product from Schultz and WTP, which were known to sell products promoting tax evasion; and (3) he had identified himself in a lawsuit against the government which stated that he would violate the law by not paying income taxes.

Azis attempted to show, through his testimony, that the IRS audited him because of his involvement in WTP.  He testified that, instead of calling him on his business phone, Agent Alexander called him at a phone number that he believed was only listed on the WTP website.  However, Agent Cole explained that field agents must find the audited taxpayers on their own because the agents are only given taxpayers' addresses, and Agent Alexander testified that he found Azis's phone number after searching on Google.  Thus, there is no indication that, by finding his phone number on the WTP website, Agent Alexander sought to harass Azis for his involvement in the organization, rather than as a regular method of searching for a contact phone number.  Further, Azis had already been selected for audit when Agent Alexander searched for his phone number.  Thus, the fact that Agent Alexander found Azis's phone number on the WTP website after he had been selected for an audit does not show that he was audited because of his involvement in WTP or for any improper purpose.

8

Azis also testified that Agent Alexander questioned him about his involvement in WTP, and asked him whether he believed that the income tax was illegal.  However, asking Azis whether he believed the income tax was unlawful when, at the time, he had not filed an income tax return for a previous year, was a legitimate question, and did not reveal any improper purpose.  As the magistrate judge stated, and the district court adopted, Azis "was not selected for an audit in retaliation for his involvement in We the People; rather, he was scrutinized as someone who affirmatively disavowed his taxpayer obligations and ultimately selected for audit when he revealed himself to be a non-filer."  Azis did not introduce any evidence to the contrary, and thus failed to meet his "heavy" burden of showing that the summonses were issued for an improper purpose.  *See LaSalle Nat. Bank*, 437 U.S. at 316, 98 S. Ct. at 2367*; Leventhal*, 961 F.2d at 940.  Accordingly, the court's conclusion that the IRS summonses were issued for a legitimate purpose was not clearly erroneous.  *See La Mura*, 765 F.2d at 981 n.10.

### B. Relevance

This Court will not overturn the district court's determination that information sought was relevant to the IRS's investigation unless clearly erroneous.  *Id.* at 982 n.13.  The government's burden of showing relevance is light.  *Id*. at 981.  If the information sought by an IRS summons might throw light upon the correctness of the taxpayer's return, then it is relevant.  *Id.* The Supreme

Court has held that the IRS may collect names of third-party licensees who purchased items from the party being audited, because the names "may be relevant" to the IRS's investigation. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 323, 105 S. Ct. 725, 732, 83 L.Ed.2d 678 (1985).

The information that Agent Alexander sought from the summonses was relevant, especially because Azis admitted to having unreported income of $26,677 in 2007. Agent Alexander needed the payor and payee information from Azis's bank accounts because he was conducting a "bank deposits method of analysis," and Azis could not provide the necessary documents due to a flood and the accidental deletion of the information. The source of the deposit items could be independent third-parties or other bank accounts in Azis's control that he had not disclosed to the IRS. The deposit items would further detail whether a check that was deposited was in part cashed, shedding additional light on Azis's income. The cancelled checks and the monthly bank statements would help establish whether Azis controlled undisclosed bank accounts. Although Azis argues that his clients' identities are irrelevant, their names "may be relevant" to show that he received unreported income. *See Tiffany Fine Arts*, 469 U.S. at 323, 105 S. Ct. at 732. Azis did not introduce any evidence to show that the information sought was irrelevant, and thus, failed to meet his "heavy" burden. *See LaSalle Nat. Bank*, 437 U.S. at 316, 98 S. Ct. at 2367; *Leventhal*, 961 F.2d at 940. Accordingly, the district

10

court's conclusion that the information sought was relevant was not clearly

erroneous.  *See La Mura*, 765 F.2d at 981.

### C. Information Not Already in IRS Possession

Here, Azis provided Agent Alexander with thousands of documents,

including bank statements, checks, and receipts.  Azis conceded, however, that he

did not provide client-identifying information or his personal bank disbursement

information.  In his brief, he further concedes the issue by stating that, although he

provided Agent Alexander with monthly account statements and cancelled checks,

he did not provide deposit items, deposit slips, or copies of all checks deposited

into his accounts because he does not maintain such copies, and such information

is unnecessary to compute his tax liabilities.  Thus, at least some of the information

requested in the summonses was not already in the possession of the IRS.  *See La

Mura*, 765 F.2d at 979.

### D. Correct Administrative Procedures

Azis raises three arguments concerning why the summonses should have

been quashed on procedural grounds, which are discussed below.

#### i. Attestation

Azis argues that, during the evidentiary hearings, Agent Alexander failed to

follow the steps required by 26 U.S.C. § 7603 when he was only able to produce a

11

blank copy of a summons form, which provided no proof that a proper attestation had been made on the original summonses forms to the banks.

A summons issued under 26 U.S.C. § 7602 shall be served by an attested copy delivered to the person to whom it is directed, and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. 26 U.S.C. § 7603(a).

Agent Alexander's sworn declaration provided that, on March 18, 2011, he served the summoned parties with attested copies of the summonses, in accordance with 26 U.S.C. § 7603. This was sufficient to establish a prima facie case. *See La Mura*, 765 F.2d at 979. Furthermore, the certificates of service on the summonses stated that Agent Alexander sent attested copies of the summons. The certificates of service provided evidence that Agent Alexander did provide attested copies. 26 U.S.C. § 7603(a). Azis provided no evidence to overcome his "heavy" burden of disproving that the summoned parties received attested copies of the summonses. *See LaSalle Nat. Bank*, 437 U.S. at 316, 98 S. Ct. at 2367; *Leventhal*, 961 F.2d at 940.

ii. Time and Manner of Notice

Next, Azis contends that Agent Alexander did not provide him with complete copies of the summonses within three days of the day on which service to

12

the third parties was made, as required by § 7609.  He also argues that faxing is not a proper method for delivery of notice.

Notice must be given to any person about whom the IRS has summoned information from a third-party record keeper.  26 U.S.C. § 7609(a)(1).  Such notice to the taxpayer must be given within three days of the day on which such service is made to the third party, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined.  *Id.*  Such notice shall be sufficient if, on or before the third day, notice is served in the manner provided in § 7603, or is mailed by certified or registered mail to the last known address of such person, or left with the person summoned.  *Id.* § 7609(a)(2). Service under § 7603 requires an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode.  *Id.* § 7603(a).

Here, it is undisputed that Agent Alexander served copies of the summonses, without "Attachment A," to Azis by certified mail on March 18, 2011. "Attachment A" listed the specific records sought from the third party banks. Agent Alexander faxed Azis the missing attachments of the summonses seven days later, on March 25, 2011.  Agent Alexander averred that, although he inadvertently omitted the attachments, he remedied the omission "by providing the full summonses with the attachments on March 25, 2011."  Azis contested this assertion by averring that Agent Alexander only faxed three pages, consisting of

13

copies of "Attachment A" for each of the three summonses, and provided evidence purporting to show this.   Agent Alexander testified that the attachments were delayed because he was out of town for training, and was unable to fax the documents.  Because Azis was not sent full copies of the summonses within three days of the banks receiving them, Agent Alexander did not comply with the statutory requirements.  *See* 26 U.S.C. §§ 7603(a), 7609(a)(1), (2).

However, nothing in the language of the Internal Revenue Code mandates the non-enforcement of an IRS summons because of an infringement of the Code. *United States v. Bank of Moulton*, 614 F.2d 1063, 1066 (5th Cir. 1980).  Moreover, in determining whether to enforce a summons, the district court must evaluate the seriousness of the violation under all the circumstances, including the government's good faith and the degree of harm imposed by the procedural violation.  *Id.*

Other Circuits that have addressed the issue have held that violations of the IRS or tax regulations occurring in the course of a tax investigation do not necessarily require summonses to be quashed.  Those courts have similarly evaluated whether the taxpayer suffered harm or prejudice, and whether the IRS's mistakes were made in good faith.  *See Adamowicz v. United States*, 531 F.3d 151, 161-62 (2d Cir. 2008) (holding that "whether the government's violation of the [Internal Revenue Code] or an IRS regulation in connection with the issuance of a

14

summons affects the enforceability of that summons depends on the totality of the circumstances, including the seriousness of the infringement, the harm or prejudice, if any, caused thereby, and the government's good faith"); *Robert v. United States*, 364 F.3d 988, 996-97 (8th Cir. 2004) (same); *Cook v. United States*, 104 F.3d 886, 889 (6th Cir. 1997) (applying a harmless error standard to determine whether summons should be quashed based on IRS's minor procedural error); *Sylvestre v. United States*, 978 F.2d 25, 27-28 (1st Cir. 1992) (same); *United States v. Payne*, 648 F.2d 361, 363 (5th Cir. Unit A June 1981) (holding that a summons was enforceable when "improper service was, at most, technical and not serious," the government did not show bad faith, and the taxpayer suffered no harm or prejudice).

After evaluating the seriousness of the infraction under all the circumstances, including the government's good faith and the degree of harm imposed, we determine that the district court did not clearly err in finding that Agent Alexander's initial failure to provide the full summonses "was quickly cured and no prejudice resulted." *Bank of Moulton*, 614 F.2d at 1066. Agent Alexander offered a good faith reason for not complying with the statutory requirements when he testified that he was unable to fax the attachments because he was out of town for training. Further, the fact that Agent Alexander faxed the attachments instead of using the methods enumerated in § 7603(a) or § 7609(a)(2) "was, at most,

15

technical and not serious." *See Payne*, 648 F.2d at 363.  Moreover, despite the delay, Azis had notice of the summonses and was able to timely file his petition to quash.  He has not indicated, much less shown, any other specific harm caused by the shortened time in which to prepare his petition to quash.  Thus, Azis was not prejudiced by the delay, and suffered no harm as a result.  *Bank of Moulton*, 614 F.2d at 1066.

iii. Authority to Issue Summons

Next, Azis argues that, although Agent Alexander made a sworn declaration that he was authorized to issue summonses, such declarations are subject to verification.  If the summonses are upheld as lawful, the IRS has the burden of proving that Agent Alexander had the lawful authority to issue summonses.

As an initial matter, although Azis argues that because he contested Agent Alexander's assertions in his declaration, the burden of proof shifted to the IRS, that argument is unavailing.  *See United States v. Southeast First Nat. Bank of Miami Springs*, 655 F.2d 661, 664 (5th Cir. Unit B Sept. 1981) (holding that the taxpayer cannot rebut the IRS's prima facie case for enforcement of a summons simply by denying the existence of the *Powell* elements).  Accordingly, the burden remained on Azis to prove that Agent Alexander did not have lawful authority to issue summonses.  *See Leventhal*, 961 F.2d at 940.

The Secretary of the Treasury, or the IRS as his designee, may issue summonses to those in possession, custody, or care of books, papers, records, or other data which may be relevant or material to ascertaining the correctness of any return. *La Mura*, 765 F.2d at 978-79 (quoting 26 U.S.C. § 7602). The Secretary of the Treasury has delegated summons authority to the Commissioner of the IRS. 26 C.F.R. § 301.7602-1(b); 26 C.F.R. § 301.7701-9(b). As authorized by the Secretary, the IRS Commissioner has re-delegated this authority to the Deputy Commissioner of the IRS. IRS Delegation Order 1-23, IRM 1.2.40.21 (Nov. 8, 2000). The Deputy Commissioner has re-delegated the authority to issue third-party summonses to revenue agents, provided that a supervisory official at the level of the officer's manager or above has authorized the issuance of the summons. 26 C.F.R. § 301.7701-9(c); 26 C.F.R. § 301.7701-9(b); IRS Delegation Order No. 25-1, 2007 WL 7300510 (Apr. 30, 2009).

Here, the summonses were approved and authorized by a supervisory official, an IRS Group Manager. Thus, Agent Alexander was permitted to issue the third-party summonses. *See* 26 C.F.R. § 301.7701-9(c); 26 C.F.R. § 301.7701-9(b); IRS Delegation Order No. 25-1, 2007 WL 7300510 (Apr. 30, 2009). Because Azis provided no evidence that Agent Alexander did not have lawful authority to issue the summonses, he did not meet his "heavy" burden. *See LaSalle*

17

*Nat. Bank*, 437 U.S. at 316, 98 S. Ct. at 2367; *Leventhal*, 961 F.2d at 940;

*Southeast First Nat. Bank of Miami Springs*, 655 F.2d at 664.

In sum, Azis did not meet his "heavy" burden to disprove any of the four

elements of the government's prima facie case. *See LaSalle Nat. Bank*, 437 U.S. at

316, 98 S. Ct. at 2367; *La Mura*, 765 F.2d at 979-980. Accordingly, the district

court did not clearly err in denying Azis's petition to quash the summonses. *See*

*Nero Trading*, 570 F.3d at 1248.

Finally, Azis argues that the district court erred in refusing to grant his

requests for discovery. He argues that discovery was necessary to determine the

true purpose and relevancy of the summonses, and that the summonses were issued

for an improper purpose.

This Court reviews the district court's denial of discovery for abuse of

discretion. *Nero Trading*, 570 F.3d at 1248. "Depositions, interrogatories, and the

rest of the panoply of expensive and time-consuming pretrial discovery devices

may not be resorted to as a matter of course and on a mere allegation of improper

purpose." *Id.* at 1249 (brackets omitted). "Summons enforcement proceedings

should be summary in nature, and discovery should be limited." *United States v.*

*Stuart*, 489 U.S. 353, 369, 109 S. Ct. 1183, 1193, 103 L.Ed.2d 388 (1989).

Here, the district court did not abuse its discretion in denying Azis's requests

for discovery. The court permitted two evidentiary hearings to allow Azis to

18

examine the IRS agents to determine whether the summonses were issued for an improper purpose.  Thus, Azis had meaningful opportunities to challenge the IRS's allegations.  The court also noted that discovery would be expensive and time consuming.   Moreover, summons enforcement proceedings should be summary in nature.

Upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**

19