**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SAM T. JEWELL,

        Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

        Respondent-Appellee.

No. 13-6069

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:12-CV-01125-C)**

SAM T. JEWELL,

        Petitioner-Appellee,

v.

UNITED STATES OF AMERICA,

        Respondent-Appellant.

No. 13-7038

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:12-CV-00424-JHP)**

David J. Looby, Rubenstein & Pitts, PLLC, Edmond, OK, for Petitioner-Appellant/Petitioner-Appellee.

Robert W. Metzler, Attorney, Tax Division (Kathryn Keneally, Assistant Attorney General; and Gretchen M. Wolfinger, Attorney, Tax Division on the briefs), Department of Justice, Washington, D.C., for Respondent-Appellee/Respondent-Appellant.

———————————————

Before **LUCERO, TYMKOVICH,** and **BACHARACH,** Circuit Judges.

———————————————

**BACHARACH**, Circuit Judge.

The Internal Revenue Service issued four summonses to banks in the Eastern and Western Districts of Oklahoma for records involving nursing homes owned by Mr. Sam Jewell. Under federal law, the IRS had to notify Mr. Jewell at least 23 days before the examination date. Because the IRS waited too long to mail the notices to Mr. Jewell, he received the notices less than 23 days before the records were to be examined. Alleging inadequate notice, Mr. Jewell filed petitions to quash the summonses in the Eastern and Western Districts of Oklahoma.

The two courts split on how to interpret the notice requirement. The Western District of Oklahoma granted the government's summary judgment motion and denied Mr. Jewell's petition to quash, noting that he received the summonses in time to file his petition. The Eastern District of Oklahoma granted Mr. Jewell's petition to quash and denied the government's motion to dismiss, reasoning that the IRS failed to comply with the notice requirement. Mr. Jewell appeals the ruling in the Western District of

2

Oklahoma, and the government appeals the ruling in the Eastern District of Oklahoma.

We hold that the IRS cannot obtain an order enforcing the summonses, affirming the

ruling of the Eastern District of Oklahoma and reversing the ruling of the Western

District of Oklahoma (with instructions to grant Mr. Jewell's petition to quash the two

summonses).

## I.      Standard of Review

The Western District of Oklahoma converted the government's motion to dismiss

into a motion for summary judgment. The court then granted the motion. Our review of

this ruling is de novo. *Wheeler v. Hundsman*, 825 F.2d 257, 260 (10th Cir. 1987). In

conducting this review, we view the record in the light most favorable to Mr. Jewell.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).[1] Viewing the

evidence in this manner, we consider the materiality of any genuine issues of material

fact. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1311 (10th Cir. 2009).

The two district courts also addressed petitions to quash the summonses. For the

rulings on these petitions, we review only for an abuse of discretion. *See Hopkins v. IRS.*,

318 F. App'x 703, 705 (10th Cir. 2009); *Lain v. United States*, 173 F. App'x 651, 652

(10th Cir. 2006).[2]

---

[1]      The government argues that the summary judgment standard does not apply when
the government makes its prima facie case under *Powell*. But the issue here is whether
the government presented a prima facie case under *Powell*.

[2]      *Hopkins* and *Lain* are unpublished; though they are not precedential, they are
persuasive.

3

**II.     The Requirements of *United States v. Powell***

In *United States v. Powell*, the Supreme Court listed four requirements for the IRS

to make a prima facie case for enforcement of an administrative summons:

- The investigation must be conducted for a legitimate purpose;

- the summons must be relevant to that purpose;

- the IRS must not already have the information sought; and

- the IRS must have followed the "administrative steps required by [the Internal Revenue Code]."

*United States v. Powell*, 379 U.S. 48, 57-58 (1964).  Mr. Jewell and the government agree

that the fourth prong of *Powell* determines whether the summonses must be quashed.

**III.     The Administrative Steps in 26 U.S.C. § 7609(a)(1)**

In 26 U.S.C. § 7609, the Internal Revenue Code lists special procedures for the

IRS's summonses to third parties.  These procedures include 23 days' notice to the

taxpayer:

> If any summons to which this section applies requires the giving of
> testimony on or relating to, the production of any portion of records made
> or kept on or relating to, or the production of any computer software source
> code (as defined in 7612(d)(2)) with respect to, any person (other than the
> person summoned) who is identified in the summons, *then notice of the
> summons shall be given to any person so identified* within 3 days of the day
> on which such service is made, *but no later than the 23rd day before the
> day fixed in the summons as the day upon which such records are to be
> examined*. Such notice shall be accompanied by a copy of the summons
> which has been served and shall contain an explanation of the right under
> subsection (b)(2) to bring a proceeding to quash the summons.

4

26 U.S.C. § 7609(a)(1) (2006) (emphasis added).  In both cases, the government admitted that the taxpayer had not received the statutory notice.  Appellant's App. (W.D. Okla. appeal) at 62; Appellant's App. (E.D. Okla. appeal) at 75.  The resulting question is whether we are free to disregard the statutory requirement of 23 days' notice.

### A.     Statutory Interpretation

To determine whether the IRS complied with § 7609(a)(1), we begin with the statutory language.  If the plain language of the statute is clear, our inquiry ordinarily ends.  *E.g.*, *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991).

### B.     The Meaning of "Shall"

The statute provides that notice of the summons "shall" be given within 23 days before the date of the examination.  Thus, we begin with the meaning of "shall."

This term indicates a mandatory intent.  *See United States v. Myers*, 106 F.3d 936, 941 (10th Cir. 1997) ("It is a basic canon of statutory construction that use of the word 'shall' indicates a mandatory intent."); *Forest Guardians v. Babbitt*, 174 F.3d 1179, 1187 (10th Cir. 1999) ("The Supreme Court and this circuit have made clear that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command.").

The government tells us that "shall" does not *always* signify a mandatory intent, relying on *Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003), and *Dolan v. United States*, 560 U.S. 605 (2010).  We disagree with the government's reading of *Barnhart* and *Dolan*.

5

In both cases, statutes provided that the government "shall" act within a set time period. *Barnhart*, 537 U.S. at 752; *Dolan*, 560 U.S. at 607-08. In both opinions, the Supreme Court acknowledged that "shall" signifies a mandatory intent. *Barnhart*, 537 U.S. at 157-60; *Dolan*, 560 U.S. at 612. In *Barnhart*, the Commissioner of Social Security had a statutory obligation to assign a company that would fund benefits for individuals who had retired from the coal industry and were eligible for benefits. *See Barnhart*, 537 U.S. at 152. In *Dolan*, the district court had a statutory duty to determine how much the defendant owed in restitution. *See Dolan*, 560 U.S. at 607-08. To carry out these duties, the government had statutory deadlines. But in both cases, the government missed the deadlines. *See Barnhart*, 537 U.S. at 155; *Dolan*, 560 U.S. at 609.

Thus, in both cases, the Supreme Court had to determine which mandatory obligation (the underlying obligation or the deadline) took precedence. In *Barnhart*, did the failure to timely comply mean that the Social Security Commissioner no longer had to designate a company to fund benefits for retirees entitled to benefits? And, in *Dolan*, did the district court's failure to timely comply mean that the victim would no longer get the restitution that Congress said he was owed? In both cases, the Court held that missing a deadline does not relieve the government of its statutory obligations. *Barnhart*, 537 U.S. at 158-72; *Dolan*, 560 U.S. at 611. Thus, the Social Security Commissioner's failure to timely designate a company would not prevent retirees from obtaining benefits, and a court's delay would not relieve criminals of a duty to compensate their victims.

6

Our case is different. The IRS could issue the summonses, but it was not required to do so. In *Barnhart*, that choice was not available to the Social Security Commissioner; and in *Dolan*, that choice was not available to the sentencing court.

In short, *Barnhart* and *Dolan* did not disturb the age-old precept that "shall" means "shall."

## C.     The Meaning of "Administrative Steps"

Though the statute creates a mandatory obligation, we must consider whether that obligation involves an "administrative step" under *Powell*. As discussed above, the *Powell* Court held that a prima facie case requires the IRS to show that it followed the "administrative steps required by [the Internal Revenue Code]." *United States v. Powell*, 379 U.S. 48, 57-58 (1964). We know the 23-day notice requirement is mandatory, but is it an "administrative step" under *Powell*? We conclude that it is.

In *Powell*, the Supreme Court did not define the term "administrative step." Thus, we start with the common meaning of the term. The term is broad, defined in one leading dictionary as "[p]ertaining to, or dealing with, the conduct or management of affairs." I *The Oxford English Dictionary* 163 (2d ed. 1989). The government acknowledges that the 23-day notice provision is "a procedural requirement for the issuance of an administrative summons." Appellee Br. (W.D. Okla. appeal) at 39.[3] This requirement is

---

[3]     In the district court proceedings, the government appeared to acknowledge that the 23-day notice requirement was among the tax code's "administrative steps" under *Powell*. For example, the government argued that its affidavit had shown compliance

not only "procedural," but also "administrative." *See United States v. MacKay*, 608 F.2d 830, 833-34 (10th Cir. 1979).[4]

The IRS elsewhere characterizes the notice defect as a mere "technical default." Appellee Br. (W.D. Okla. appeal) at 24 n.8. This characterization, if accurate, is immaterial. Even if the IRS's delay constituted a "technical default," the question would be whether the "technical" notice requirement involves an "administrative" requirement. The meaning of the term "administrative" is broad and would include precisely this sort of "technical" requirement.

**D.     Application of *Powell***

Having determined that the 23-day notice requirement is mandatory and an "administrative step," we must apply the Supreme Court's opinion in *Powell*. There, the Supreme Court held that the IRS cannot make a prima facie case for enforcement of a summons until it shows compliance with the tax code's "administrative steps." *United States v. Powell*, 379 U.S. 48, 57-58 (1964). These steps include the 23-day notice requirement, and the government admits that it did not give 23 days' notice. Under *Powell*, that failure prevents the IRS from making a prima facie showing for enforcement of the summonses. Thus, *Powell* prevents enforcement of the summonses.

---

with "all administrative steps" "with the exception of the 23-day notice requirement." Appellant's App. (W.D. Okla. appeal) at 55; Appellant's App. (E.D. Okla. appeal) at 67.

[4]     In *MacKay*, we applied *Powell* and addressed whether the IRS had complied with the tax code's administrative steps. *MacKay*, 608 F.2d at 832-34. We held that the IRS had followed the required "administrative steps," including the requirement for notification of the taxpayer "as required by § 7609(a)(1)." *Id.* at 833-34.

8

## E. Approaches in Other Circuits

We are mindful of the fact that five other circuit courts have declined to apply *Powell* in this manner. *Adamowicz v. United States*, 531 F.3d 151, 161 (2d Cir. 2008) (per curiam); *Cook v. United States*, 104 F.3d 886, 889-90 (6th Cir. 1997); *Sylvestre v. United States*, 978 F.2d 25, 28 (1st Cir. 1992) (per curiam); *United States v. Bank of Moulton*, 614 F.2d 1063, 1066 (5th Cir. 1980) (per curiam); *Azis v. U.S. IRS*, 522 F. App'x 770, 777 (11th Cir. 2013) (per curiam). We are hesitant to create a circuit split, but we have little choice because we are obliged to follow the Supreme Court's holding in *Powell* even if other circuit courts have not.

Four circuit courts have acknowledged *Powell*, but have declined to enforce the 23-day requirement as mandatory. These courts have taken two approaches. One approach (taken by the First Circuit) is to acknowledge that *Powell* requires the government to comply with all of the "required administrative steps," but then to ignore the fact that the 23-day notice is one of the administrative steps required in the tax code. *See Sylvestre v. United States*, 978 F.2d at 26, 28. A second approach (taken by the Second, Sixth, and Eleventh Circuits) is to assume equitable power to excuse the notice defect if the taxpayer was not prejudiced. *See Cook v. United States*, 104 F.3d at 889-90; *Azis v. U.S. IRS*, 522 F. App'x at 777; *Adamowicz v. United States*, 531 F.3d at 161. None of these courts denied that the 23-day requirement was mandatory or an "administrative step" of the tax code.

9

One other circuit court has declined to apply *Powell* when the IRS violated a separate notice provision:  26 U.S.C. § 7609(d)(1).  *Bank of Moulton*, 614 F.2d at 1065. Though the IRS violated the notice requirement, the Fifth Circuit Court of Appeals allowed enforcement of the summons to avoid elevating "form over substance."  *Id.* at 1066-67.

Though we do not lightly create a circuit split, we are obliged to follow Supreme Court precedent, even when it might be viewed as "inequitable" or as "form over substance."  In *Powell*, the Supreme Court expressed itself clearly:  If the IRS does not comply with the administrative requirements of the Internal Revenue Code, its summonses are unenforceable.  *United States v. Powell*, 379 U.S. 48, 57-58 (1964).  The 23-day requirement is mandatory and an administrative requirement of the Internal Revenue Code.  Thus, under *Powell*, we conclude that the district courts in the Western and Eastern Districts of Oklahoma were obligated to grant Mr. Jewell's petitions to quash the summonses.

## IV.    Conclusion

In enacting § 7609(a)(1), Congress stated that the IRS "shall" give taxpayers at least 23 days' notice.  In *Powell*, the Supreme Court required the IRS to show administrative compliance with the tax code before it can enforce a summons.  In both cases, the IRS admittedly violated the tax code by failing to give Mr. Jewell 23 days' notice.  As a result, the IRS cannot make a prima facie case for enforcement of the summonses.  In these circumstances, we:

10

- affirm the Eastern District of Oklahoma's ruling, and

- reverse the Western District of Oklahoma's grant of summary judgment to the government and denial of Mr. Jewell's petition to quash, with instructions to grant Mr. Jewell's petition to quash the summonses.

**13-6069, 13-7038;** *United States v. Jewell*

**TYMKOVICH,** Circuit Judge, dissenting.

I agree with the majority that the 23-day notice provision in 26 U.S.C.

§ 7609(a) imposes a mandatory duty on the IRS and that the *Powell*[1] test governs

whether the IRS has made a *prima facie* showing sufficient to support

enforcement of a third-party summons. But I do not believe that *Powell* imposes

a *per se* bar on enforcement in the event the IRS commits a technical breach of an

administrative provision of the Internal Revenue Code. I would follow the

approach of the other circuits[2] and consider whether, under the totality of the

circumstances, a court should decline to enforce a summons.

The IRS, no one disputes, defaulted on its statutory duty to provide 23-day

notice to Jewell. "But the failure to act on schedule merely raises the real

question, which is what the consequence of tardiness should be." *Barnhart v.*

*Peabody Coal Co.*, 537 U.S. 149, 157 (2003). The majority notes the differences

between this case and *Barnhart*, but does not call into question the distinction

between a statutory duty and the appropriate remedy for its breach. Where "a

---

[1]  *United States v. Powell*, 379 U.S. 48 (1964).

[2]  In addition to the circuits noted by the majority, the Eighth and Ninth
Circuits have read *Powell* to allow for a totality of the circumstances test in the
event of a technical breach of the Code's administrative steps. *See Robert v.*
*United States*, 364 F.3d 988, 996–97 (8th Cir. 2004); *United States v. Richey*, 632
F.3d 559, 565 (9th Cir. 2011). I disagree with the majority's reading of *Sylvestre*
*v. United States*, 978 F.2d 25 (1st Cir. 1992). In *Sylvestre*, the First Circuit held
that, based on the totality of the circumstances, a summons could be enforced
despite the IRS's violation of the 23-day notice provision.

statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993) (government's failure to comply with mandatory timing provisions did not require dismissal of a forfeiture action).

The purpose of the four-part *Powell* test is simply to determine whether the IRS is making "abusive use of the court's process."  379 U.S. at 51.  The test's fourth prong does not impose a strict compliance requirement on every procedural provision of the Code; rather, the IRS's adherence to the Code's administrative steps is merely one indicator of the agency's good faith in seeking to enforce a summons.  Requiring only substantial compliance with the 23-day notice provision is consistent with this prong of the *Powell* test.  The totality of the circumstances approach adopted by the other circuits is, I believe, more consistent with the purpose of the *Powell* test than the majority's preferred approach.

Consequently, I would affirm the Western District of Oklahoma's grant of summary judgment for the government and remand the Eastern District of Oklahoma case to conduct a totality of the circumstances test.